**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHUBB INDEMNITY INSURANCE )
COMPANY, as subrogee of GORDON )
SIEGEL, M.D. and CLARI WECHTER, )
)
      Plaintiff, )
)    Case No. 10 CV 7111
   v. )
)    Judge Robert M. Dow, Jr.
21 EAST CEDAR, LLC; ICON DESIGN & )
DEVELOPMENT, INC.; CODEX EXC, INC.; )
BILL KOKALIAS; SWAIN DEVELOPMENT )
CORPORATION; AXIOS ARCHITECTS & )
CONSULTANTS, LTD d/b/a AXIOS )
CONSULTANTS & DESIGN/BILL G. )
KOKALIAS ARCHITECTS & DESIGN; )
DEMETRIS GIANNOULIAS; GEORGE )
GIANNOULIAS; GROUND ENGINEERING )
CONSULTANTS; GEO SERVICES, INC.; )
and SHORELINE STEEL, INC., )
)
      Defendants. )
)

## MEMORANDUM ORDER AND OPINION

Before the Court are Defendant Geo Services's motion to dismiss counts XV and XVI of Plaintiff's fourth amended complaint and to dismiss in part Count XIV [183], Defendant Ground Engineering Services's motion to dismiss counts XV and XVI of Plaintiff's fourth amended complaint [185], Defendants Axios Architects & Consultants, Ltd. and Bill G. Kokalias's joint motions to dismiss counts XII [191] and XIII [190] of Plaintiff's fourth amended complaint, and Plaintiff's motion to dismiss counterclaims for spoliation asserted by Defendant Codex Exc and Defendants Demetris Giannoulias, George Giannoulias, and 21 East Cedar Street, LLC [172]. For the reasons stated below, the Court grants Plaintiff's motion to dismiss the counterclaims for spoliation [172], grants Defendants Kokalias and Axios's motion to dismiss Count XIII [190],

denies Defendants Kokalias and Axios's motion to dismiss Count XII [191], and grants in part and denies in part Defendant Geo Services's [183] and Defendant Ground Engineering Services's [185] motions to dismiss.

## I.    Background

For the purposes of the motions to dismiss Plaintiff's fourth amended complaint, the Court accepts as true the allegations of Plaintiff's fourth amended complaint [177-1], construes all the allegations in the light most favorable to Plaintiff, and draws all reasonable inferences in Plaintiff's favor. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).  Similarly, for purposes of Plaintiff's motion to dismiss the counterclaims against it, the Court accepts as true the allegations of the counterclaims, [164] & [167], construes all allegations in the light most favorable to Defendants, and draws all reasonable inferences in Defendants' favor with respect to those claims.  *Mann*, 707 F.3d at 877.

Plaintiff Chubb Indemnity Insurance Co. ("Plaintiff" or "Chubb") is a corporation organized under the laws of New York with its principal place of business in New York.  [177-1] ¶ 1.  All Defendants with the exception of Defendant Shoreline Steel, Inc., are citizens of Illinois. See *id.* ¶¶ 3-13.  Defendant Shoreline Steel, Inc. ("Shoreline") is a citizen of Michigan.  See *id.* ¶ 13.  Plaintiff is licensed to issue policies of property insurance.  See *id.* ¶ 1.  At all relevant times, Plaintiff provided property insurance to Dr. Gordon Siegel and Clari Wechter ("the insureds"), who owned and resided in a single-family residence located at 25 East Cedar Street, Chicago, Illinois.  *Id.* ¶¶ 2, 14, 17.   Plaintiff alleges that it compensated the insureds pursuant to its policy with them and is now proceeding against Defendants in its capacity as the insureds' subrogee. *E.g.*, *id.* ¶ 126-27.

The insureds' property, 25 East Cedar Street, is adjacent to 21 East Cedar Street.  *Id.* ¶

17.  21 East Cedar Street was owned by "a combination of one or more of [Defendants] D[emetris] Giannoulias, G[eorge] Giannoulias, and 21 East Cedar, LLC."  *Id.* ¶ 17.  At all relevant times prior to mid-2008, a multi-family apartment building was located at 21 East Cedar Street.  See *id.*  ¶ 19.  In April 2008, George Giannoulias entered into a contract with Defendant Icon Design & Development, Ltd. ("Icon") pursuant to which Icon, a developer, *id.* ¶ 5, would supervise the construction of a new single-family home at 21 East Cedar Street.  *Id.* ¶ 18. George Giannoulias hired Defendant Axios Architects & Consultants d/b/a Axios Consultants & Design/Bill G. Kokalias Architects ("Axios") to design his desired four-story single-family home.  See *id.* ¶ 20.  Axios "specialized in the design of large single family residences" and "provided on-going consultation regarding construction of such homes, including but not limited to * * * all facets of engineering associated with such work."  *Id.* ¶ 8.  Defendant Bill G. Kokalias ("Kokalias"), a state-licensed architect, was designated as the chief architect for the project.  See *id.* ¶¶ 7, 20.

Before the single-family home could be built, the existing multi-family apartment building had to be demolished.  *Id.* ¶ 21.  Additionally, a deeper foundation had to be excavated. *Id.*  Before these steps were taken, Kokalias executed a Design Professional Certification for the City of Chicago, Department of Buildings and certified that the properties adjacent to 21 East Cedar Street would not require reinforcement or bracing while the work was completed.  *Id.*  ¶ 22.  Kokalias also "provided opinions and certifications affecting the demolition and excavation of the 21 East Cedar property, as well as the adjacent subject Premises at 25 East Cedar."  *Id.* ¶ 2

During the summer of 2008, Defendant Swain Development Corporation ("Swain"), a general contractor for residential construction, *id.* ¶ 4, acted as general contractor for the demolition.  *Id.* ¶ 22. Swain hired Defendants Ground Engineering Consultants, Inc. ("Ground"),

which specializes in geotechnical engineering, *id.* ¶ 11, and Geo Services, Inc. ("Geo"), which specializes in soil boring for geotechnical engineering projects, *id.* ¶ 12, "to provide a ground soil review for 21 East Cedar Street and the neighboring properties to ensure that the neighboring properties were safe and secure during the demolition, excavation, and construction that was set to take place." *Id.* ¶ 24. After conducting its review, Ground provided engineering specifications and calculations setting forth "how to excavate at 21 East Cedar [Street] so as to protect the neighboring properties from damage." *Id.*

Between May 2008 and October 2008, Defendant Codex Exc ("Codex") demolished the multi-family apartment building at 21 East Cedar Street. *Id.* ¶ 25. The demolition work performed by Codex caused some damage to the insureds' residence at 25 East Cedar Street. *Id.* Sometime on or after August 3, 2008, Codex also began excavating 21 East Cedar Street to accommodate the planned deeper basement. *Id.* ¶ 27. Codex held itself out as being skilled in the areas of demolition and excavation. *Id.* ¶ 6.

At some point during the excavation process after the apartment building was demolished, Shoreline, which was in the business of installing steel sheet pilings for excavation projects, *id.* ¶ 13, was hired to install 4.5-inch "Zee" steel sheet pilings between 21 East Cedar Street and 25 East Cedar Street. *Id.* ¶ 26. The installation of the pilings and the excavation generally "undermined the west portion of the foundation" of the insureds' residence at 25 East Cedar Street. *Id.* ¶ 28. The damage continued throughout August, September, and October 2008 as the 21 East Cedar Street project moved forward. *Id.* ¶ 29. As a result, the insureds' home "settle[d] significantly," *id.* ¶ 28, and the foundation, floors, walls, ceilings, and roof were irreparably damaged. *Id.* ¶ 30. The value of the damage exceeded $75,000. *Id.*

Plaintiff, in its capacity as the insureds' subrogee, filed a nineteen-count fourth amended

complaint. See [177-1]. The Court addresses only those counts at issue in the pending motions. Count XII alleges that Defendants Kokalias and Axios violated the Illinois Adjacent Landowner Excavation Protection Act ("ALEPA"), 765 ILCS 140/1 *et seq.*, by failing to provide sufficient notice to the insureds and by failing to provide sufficient bracing for 25 East Cedar Street. See [177-1] ¶¶ 119-27. Count XIII alleges that Kokalios and Axios violated City of Chicago ordinances governing excavation work on private property, Mun. Code of Chi. §§ 13-124-380 *et seq.*, by failing to provide sufficient bracing for 25 East Cedar Street. See [177-1] ¶¶ 128-36. Count XIV alleges that Geo and Ground were negligent in their analyses of the soil conditions at 21 East Cedar Street, their development of a plan that would provide proper support to neighboring structures, their investigation of the need for bracing and support, and/or their provision of proper and adequate notice to the insureds. [177-1] ¶¶ 139(a)-(d). It also alleges that Geo and Ground were "otherwise careless and negligent," [177-1] ¶ 139(e), and that their negligence proximately caused damage to 25 East Cedar Street. See *id.* ¶¶137-42. Count XV alleges that Geo and Ground, like Kokalias and Axios, violated the ALEPA by failing to provide sufficient notice to the insureds and by failing to provide sufficient bracing for 25 East Cedar Street. See [177-1] ¶¶ 143-51. Finally, Count XVI alleges that Geo and Ground violated City of Chicago ordinances governing excavation work on private property, Mun. Code of Chi. §§ 13-124-380 *et seq.*, by failing to provide sufficient bracing for 25 East Cedar Street. See [177-1] ¶¶ 152-60.

After Plaintiff filed its third amended complaint, Defendant Codex filed a counterclaim for spoliation. See [167]. Codex alleges that Counts VIII-X of the third amended complaint (now fourth amended complaint – the allegations are identical) are directed against it, and that Codex has answered and asserted affirmative defenses to the allegations. See *id.* ¶¶ 2-3. Codex

alleges that Chubb knew or should have known that to properly defend itself, Codex would need to inspect and investigate the property at 25 East Cedar Street in its damaged state. See *id*. ¶ 6. Nonetheless, and despite having the ability to do so, Chubb failed to prevent the home and the property surrounding it from being demolished or otherwise modified and generally was negligent and careless in its preservation of the premises. *Id.* ¶¶ 7-9. As a direct result of Chubb's actions or omissions, Codex's ability to defend itself against Chubb's claims has been substantially impaired. *Id.* ¶ 10.

Defendants Demetris Giannoulias, George Giannoulias, and 21 East Cedar Street LLC jointly filed a virtually identical counterclaim against Chubb. See [164]. They allege that Counts I and II of the third amended complaint (now fourth amended complaint – the allegations are identical) sound against them, and that they have answered and asserted affirmative defenses to the allegations. *Id.* ¶¶ 2-3. They allege that Chubb knew or should have known that to properly defend themselves, they would need to inspect and investigate the property at 25 East Cedar Street in its damaged state. See *id*. ¶ 5. Nonetheless, and despite having the ability to do so, Chubb failed to prevent the home and the property surrounding it from being demolished or otherwise modified and generally was negligent and careless in its preservation of the premises. *Id.* ¶¶ 6-8. As a direct result of Chubb's actions or omissions, these Defendants' ability to defend themselves against Chubb's claims has been substantially impaired. *Id.* ¶ 10.

## II.    **Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

the pleader is entitled to relief," such that the defendant is given "'fair notice of what the * * * claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Although "[s]pecific facts are not necessary [–] the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original) – "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks*, 578 F.3d at 581 (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

## III.    Discussion

### A.    Motion to Dismiss Spoliation Counterclaims [172]

Under Illinois law, spoliation of evidence is a form of negligence.  *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012).   Accordingly, to state a claim of spoliation, a party must allege that (1) the alleged spoliator owed the party a duty to preserve the evidence in question; (2) the alleged spoliator breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the party's inability to prove its underlying claim; and (4) as a result, the party suffered actual damages.  *Id.*

Chubb contends first that it had no duty to preserve 25 East Cedar Street in its damaged state.  See [173] at 5-10.  The general rule in Illinois is that there is no duty to preserve evidence.  *Martin*, 979 N.E.2d at 28.  Such a duty may arise only through an agreement, contract, statute, voluntary assumption, or other "special circumstance."  *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270-71 (Ill. 1995); see also *Martin*, 979 N.E.2d at 28 (same).  If a duty is present, a party asserting a spoliation claim also must allege that the duty extends to the specific evidence at issue; that is, the party must allege that the "a reasonable person in the [alleged spoliator's] position should have foreseen that the evidence was material to a potential civil action."  *Martin*, 979 N.E.2d at 28 (quoting *Boyd*, 652 N.E.2d at 271); see also *Dardeen v. Kuehling*, 821 N.E.2d 227, 231 (Ill. 2004).

Here, both counterclaims for spoliation allege that Chubb "had a duty to preserve, and make available for inspection, the home located at 25 East Cedar, Chicago, Illinois, as well as the surrounding premises."   [164] ¶ 7; [167] ¶ 8.  They also allege that Chubb was an insurance carrier that provided a policy to the insureds, see [164] ¶ 6; [167] ¶ 7, suggesting, on a generous reading, that the policy gave rise to the alleged duty.  The Illinois Supreme Court has made clear,

however, that a contract may give rise to a duty to preserve evidence only when both the party asserting spoliation and the alleged spoliator are privy to the contract. *Dardeen*, 821 N.E.2d at 231 ("When we said, in *Boyd*, that a duty to preserve evidence could arise by an agreement or contract, we meant an agreement or contract between the parties to the spoliation claim."). The counterclaims are devoid of any allegations suggesting that Chubb had any contractual relationship with any of the counterclaimants. See generally [164]; [167]. The counterclaims do allege that Chubb "had the ability to preserve the premises," [164] ¶ 6; [167] ¶ 7, but mere possession and control of the subject evidence are not sufficient to give rise to a duty to preserve it. *Martin*, 979 N.E.2d at 31-32. As the counterclaims do not plausibly assert any other basis for the existence of a duty – they do not, for instance, allege that Chubb voluntarily assumed a duty to preserve the premises, or that there was some other "special circumstance" giving rise to a duty – they fail to state a claim for spoliation. Accordingly, the Court grants Chubb's motion to dismiss the spoliation counterclaims [172]. The dismissal is without prejudice; if Defendants believe that they can, consistent with Federal Rule of Civil Procedure 11, cure the deficiencies in their pleadings, they are given 21 days from the date of this order in which to do so.

### B. Motions to Dismiss ALEPA Claims

#### 1. "Owner or Possessor of Land"

Counts XII and XV of the fourth amended complaint allege violations of the ALEPA against Defendants Axios (Count XII), Kokalias (Count XII), Geo (Count XV), and Ground (Count XV). Defendants Axios and Kokalias filed a joint motion to dismiss Count XII [191], and Defendants Geo and Ground separately filed motions to dismiss Count XV. See [183] (Geo); [185] (Ground). The primary argument made in each of these motions to dismiss is that the Defendant in question is not an "owner or possessor of land" subject to liability under the

statute.

The purpose of what is now the ALEPA is to protect the owners of properties adjacent to properties that are being excavated. *Proud v. W.S. Bills & Sons, Inc.*, 255 N.E.2d 64, 68 (Ill. App. Ct. 3d Dist. 1970). In relevant part, the ALEPA requires the "owner or possessor of land intending to make or to permit an excavation to be made on his land" to "give due and reasonable notice in writing to the owner or owners of adjoining lands and of adjoining buildings and other structures stating the depth to which the excavation is intended to be made and when the excavation will begin." 765 ILCS 140/1(1). If the excavation depth is projected to be not more than eight feet below grade, see 765 ILCS 140/1(4), the "owner or possessor" of the land to be excavated must give the owner of the adjacent property at least 30 days to take protective measures to shore up his property. 765 ILCS 140/1(1). If the excavation depth is projected to be deeper than eight feet below grade, the "owner or possessor of the land on which the excavation is being made, if given the necessary license to enter on adjoining land and not otherwise, shall protect the said adjoining land and any building or other structure thereon, without cost to the owner thereof, by furnishing lateral and subjacent support to said adjoining land and all buildings and structures thereon." 765 ILCS 140/1(5). "Owners" or "possessors" who fail to comply with these requirements are liable to the "owner[s] of adjacent property for any damage to the land or to any buildings or other structure thereon arising from such excavation." 765 ILCS 140/1(2), (5).

In its fourth amended complaint, Plaintiff does not indicate the projected depth of the excavation, but alleges that, regardless of the depth of the excavation, Kokalias, Axios, Geo, and Ground violated the applicable statutory provision because they provided neither notice to the insureds nor adequate bracing of 25 East Cedar Street. See *Heerey v. Berke*, 534 N.E.2d 1277,

1285 (Ill. App. Ct. 1st Dist. 1989) (explaining that whether subsection (1) or subsection (5) applies depends upon the anticipated depth of the excavation); *Smith v. Roberts*, 370 N.E.2d 271, 274 (Ill. App. Ct. 4th Dist. 1977) ("The failure of the notices to specify the depth of the excavation renders it impossible for an adjoining landowner to determine whether he or the excavating landowner has the duty to shore up the property as it is the depth of the excavation which is determinative of whether paragraph 1 or paragraph 5 of the Act will apply.").  Each of these Defendants contends that he or it is not properly considered an "owner or possessor of land" under the ALEPA.

The Illinois Appellate Court has twice considered the scope of the phrase in the context of statutes that are substantively identical to the current version of the ALEPA.  In *Proud v. W.S. Bills & Sons, Inc.*, 255 N.E.2d 64 (Ill. App. Ct. 3d Dist. 1970), the plaintiff landowner sustained damage to her property during her neighbor's excavation and sued the owner of the land adjoining hers as well as the contractor who had "agreed to perform all services and furnish all materials necessary to erect the new [building] for [defendant owner]" and "to excavate and protect the west wall of the Proud building."  *Id.* at 67.  The contractor argued that it should not be considered an "owner or possessor of land."  See *id.* at 68.  The Illinois Appellate Court disagreed.  It held that "the term 'owner or possessor of land' should be construed to mean not only the record title owner but any person in possession of the land for any reason.  This would include an excavator or contractor as a 'possessor' of the land under the terms of the statute." *Id.* at 70; see also *id.* ("The definition of 'possessor' where it is used in a statute is not necessarily restricted to owners, lessees or similar occupants, where the objective of the Act is to control activities of 'possessors,' however fleeting such possession may be.").  The court emphasized that "the legislative intent was to give broad protection to adjoining landowners," and reasoned

that "[a]ction should be permitted as against the excavator as well as the owner of the land to give the statute its intended [e]ffect." *Id.* at 71. "To conclude otherwise," the court explained, "would create undesired results such as the anomalous situation where the owner could be held responsible under the strict liability provision of the statute as a result of the contractor's acts, and where, nevertheless, such owner could not recover from the contractor because the contractor could establish that his acts involved non-negligent standard procedures." *Id.*

Twenty years later, the Illinois Appellate Court again considered, albeit more obliquely, the extent to which an entity other than the owner of the excavated land could be held liable to the owners of adjoining land under what is now the ALEPA. In *Lawry's The Prime Rib, Inc. v. Metropolitan Sanitary Dist. of Greater Chicago*, 563 N.E.2d 981 (Ill. App. Ct. 3d Dist. 1990), the owners of property adjacent to an excavation site sued an engineering firm that had contracted with the excavated property's owner. See *Lawry's*, 563 N.E.2d at 983. The engineering firm initially admitted that it had been retained to "design, supervise, and inspect the installation of the retention system to be used in connection with the excavation." *Id.* It then moved for summary judgment, relying heavily on an affidavit stating that it had been contracted to "provide consulting engineering services pertaining to the design of a temporary earth retention system to be constructed by the general contractor," that the scope of the services it in fact had rendered was limited to the design of the earth retention system to be built by the general contractor, and that it had not been involved in "any aspect of the on-site excavation." *Id.* Plaintiffs argued that summary judgment was inappropriate in light of defendant's previous admission that it had been involved in designing, supervising, and inspecting the earth retention system; these activities, they argued, "were clearly the kind of activities encompassed within the Act." *Id.*

In response, the engineering firm moved to amend its answer to retract its admissions that it had been retained to supervise and inspect the earth retention system as well as to design it. *Id.* at 983-84. The firm claimed that its admissions had been inadvertent. *Id.* at 984. The circuit court granted the motion to amend and then granted the motion for summary judgment. *Id.* The Appellate Court affirmed the circuit court's grant of the motion to amend. *Id.* The Appellate Court then determined that in light of this affirmance, it did not need to address plaintiffs' contention that the evidence "*before* the trial court allowed defendant to amended its answer to paragraph 16 raised an issue of material fact concerning defendant's status as a 'possessor' of the [excavated] property under the Act." *Id.* at 985. Thus, it did "not pass on plaintiffs' attempt * * * to analogize defendant to a general contractor who is deemed a possessor of land for purposes of liability under the Act because he is actually involved in an excavation thereon." *Id.* (citing *Proud*, 255 N.E.2d 64. It did, however, affirm the grant of summary judgment in favor of defendant. In doing so, the Appellate Court highlighted the importance of defendant's affidavit and plaintiffs' failure to submit evidence to refute it. See *id.* The Appellate Court thus implicitly concluded that a subcontractor that was retained for consulting purposes, in fact performed work relating only to the design of an earth retention system, and "was not involved in any aspect of the on-site excavation" was not properly considered a "possessor" subject to liability under the ALEPA.

Defendants argue that they were not sufficiently involved in the on-site excavation to render them analogous to the contractor in *Proud* (Kokalias and Axios) or that they are analogous to the engineering firm in *Lawry's* (Geo and Ground). Defendant Ground even offers in support of its *Lawry's* argument its own affidavit from a licensed structural and professional engineer – just like the one offered by the defendant in *Lawry's*. See [95-2]. It is not appropriate

for the Court to consider this affidavit at the motion to dismiss stage without converting the motion to one for summary judgment, however, see *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994); Fed. R. Civ. P. 12(d), and the Court declines to do so here.

The Court likewise declines to conclude at this stage that the moving Defendants cannot as a matter of law be considered "owners or possessors of land" under the ALEPA. Plaintiff's fourth amended complaint plausibly alleges that all four Defendants were involved with the on-site excavation even if they were not operating heavy machinery or moving earth. Plaintiff alleges that Kokalias "provided opinions and certifications affecting the demolition and excavation," [177-1] ¶ 7, and "certified that the properties adjacent to 21 East Cedar did not require reinforcement or bracing," *id.* ¶ 22, that Axios "provided on-going consultation regarding construction of [single-family] homes, including but not limited to all facets of engineering associated with such work," *id.* ¶ 8, that Geo, a firm that specializes in "soil boring," *id.* ¶ 12, and Ground, which specializes in "geotechnical engineering," provided a "ground soil review * * * to ensure that the neighboring properties were safe and secure upon the demolition, excavation and construction," *id.* ¶ 24, and that Ground "provided engineering specifications and calculations on how to excavate 21 East Cedar so as to protect the neighboring properties from damage." *Id.* These allegations reasonably suggest that each Defendant did more than provide one-off consultations on the design of a single component of the project, and that each was involved in at least some aspect of the on-site excavation. See *Lawry's*, 563 N.E.2d at 983.

Kokalias and Axios's reliance on the Appellate Court's use of the terms "excavator" and "excavation" in *Proud*, see [191] at 6-7, overlooks the court's broader holding and the ambiguity inherent in its concurrrent use of phrases like "contractor," "excavating contractors," "independent contractor making an excavation," and "independent contractor actually

performing the job." See *Proud*, 255 N.E.2d at 69-71. It also ignores the court's favorable quotation of *American Jurisprudence 2d* § 72 (which appears to be equivalent to today's § 76), for the proposition that "the general rule is that an action may be maintained against anyone *who causes injury*, 'whether he is the owner of the adjoining land or not.'" *Id.* at 69 (emphasis added). On the facts alleged by Plaintiff, it is not apparent that these Defendants were so removed from the physical excavation – if, in fact, that is the relevant touchstone, see *Lawry's*, 563 N.E.2d at 985 (suggesting that the pertinent question may be "actual[ ] involve[ment] in an excavation") – or that they did not cause or could not have caused the alleged injury to the insureds' property. Indeed, the sheer volume of cross-claims by most if not all Defendants against one another suggests that the degree of involvement and responsibility of everyone involved in the project is not as clear-cut as Defendants suggest.

This is not to say that the moving Defendants' arguments may not ultimately prevail after more evidence regarding their actual degree of involvement in the project is adduced. At this stage, however, it is not implausible to conclude from the fourth amended complaint's factual allegations that the moving Defendants' "ground soil review," production of "engineering specifications and calculations," "opinions and certifications," and "on-going consultation" constituted actionable "involvement" above and beyond mere "design" work in an excavation sufficient to subject them to liability under the ALEPA. The *Lawry's* court did not pass on the extent of additional involvement in the excavation necessary to give rise to liability under what is now ALEPA, see *id.*, and the Court is not able to resolve that factually intensive question at the pleading stage. The motions to dismiss Counts XII, [191], and XV, [183] & [185], accordingly are denied in part on this basis.[1]

---

[1] Defendants Kokalias and Axios also argue that they are not properly considered "possessors of 21 E. Cedar even under a broad theory of premises liability." [191] at 7. They rely on Illinois common law that

## 2.    Conclusory Allegations

Defendants Geo, [183] at 12, and Kokalias and Axios, [191] at 4-5, submit the alternative argument that the ALEPA claims should be dismissed because the fourth amended complaint alleges only in conclusory fashion that they were "possessors of land" within the meaning of the statute.  See [177-1] ¶¶ 122, 146.

It is true enough that "courts are not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "'legal conclusions can provide the framework of a complaint' so long as they are 'supported by factual allegations' and that is the case here."  *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (citation omitted).  Read in isolation, paragraphs 122 and 146 possibly could be considered objectionable.  But the fourth amended complaint contains factual allegations that lay the foundation for the more conclusory allegations contained in these paragraphs.  See [177-1] ¶¶ 17-30.  Accordingly, the Court denies the motions to dismiss on the basis of this argument.

## 3.    No Private Right of Action

Ground also argues in the alternative that Count XV should be dismissed because ALEPA does not confer a private right of action.  See [185] at 6-8.

Although ALEPA does not explicitly provide a private right of action, see 765 ILCS 140/1, Ground itself acknowledges that "when a statute is intended to protect a particular class of individuals, courts may imply a private cause of action for a violation of that statute although no

---

addresses personal injuries on construction sites and invokes the *Restatement (Second) of Torts* to do so.  See *Id.*  However, they point out in an earlier reply brief [119], which the Court advised the parties would stand, [181], that "the common law of Illinois has already developed a framework for determining the liability of those whose actions allegedly cause harm to the property of others," and that "[s]uch situations are adequately dealt with by the common law of negligence."  [119] at 5.  Plaintiffs' negligence claims against Kokalias and Axios "are not the subject of the instant motion," *id.*, and thus the common law pertaining to these types of claims is not particularly apt.

express remedy had been provided." *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 432 N.E.2d 849, 852 (Ill. 1982); see also *id.* ("The public policy underlying certain statutes demands implication of a private remedy to compensate an aggrieved individual belonging to that class of persons whom the statute was designed to protect."). "Implication by a statute of a private right of action is appropriate when: (1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3) plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act." *Rodgers v. St. Mary's Hosp.*, 597 N.E.2d 616, 619 (Ill. 1992) (quotation omitted); accord *Metzger v. DaRosa*, 805 N.E.2d 1165, 1168 (Ill. 2004).

The purpose of what is now the ALEPA is to protect the owners of properties adjacent to properties that are being excavated. *Proud v. W.S. Bills & Sons, Inc.*, 255 N.E.2d 64, 68 (Ill. App. Ct. 3d Dist. 1970). Ground does not dispute this, nor does it dispute that Plaintiff's insureds are members of that class or that their alleged injuries are of the type the ALEPA was designed to prevent. See [185] at 7-8. Ground argues only that a private right of action is unnecessary under ALEPA because "[a] private cause of action under the Act would be identical to plaintiff's common law negligence action." *Id.* at 7 (quoting *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 185 (Ill. 1999)). This argument is unavailing, however, because the ALEPA and its predecessors "changed the common law rule with regard to the duty to support adjacent land." *Proud*, 255 N.E.2d at 68. Moreover, the ALEPA is a strict-liability statute, see 765 ILCS 140/1(2) ("Any owner or possessor of land upon which an excavation is made who does not comply with the provisions of subparagraph 1, when so required, is liable to the owner of adjacent property * * * *"); 765 ILCS 140/1(5) ("[T]he owner of the land on which the excavation is being made * * * shall be liable to the owner of [adjoining] property for any

damage to the land or to any buildings or other structures thereon."); *Proud*, 255 N.E.2d at 68, which renders it an alternative to rather than a duplicate of a negligence action. Finally, Illinois courts in fact have coutenanced direct actions under the ALEPA and its predecessor statutes. See, *e.g.*, *LaSalle Nat'l Bank v. Willis*, 880 N.E.2d 1075 (Ill. App. Ct. 1st Dist. 2007); *Lawry's The Prime Rib, Inc. v. Metro. Sanitary Dist. of Greater Chi.*, 563 N.E.2d 981 (Ill. App. Ct. 1st Dist. 1990); *Proud*, 255 N.E.2d at 70-71 ("Action should be permitted as against the excavator as well as the owner of the land to give the statute its intended effect."). Accordingly, the Court denies Ground's motion to dismiss on the basis of this argument.

### C. Motions to Dismiss Ordinance Claims

Counts XIII and XVI of the fourth amended complaint allege that Defendants Axios (Count XIII), Kokalias (XIII), Geo (XVI), and Ground (XVI) violated provisions of a City of Chicago ordinance that the parties refer to as the "Excavation Work on Private Property Ordinance" ("the Ordinance") by failing to reinforce or brace the insureds' home during the excavation. See [177-1] ¶ 154. The Ordinance provides in pertinent part that "[i]f any portion of the excavation will be within five feet of any portion of a structure on the property of another, the owner of the property to be excavated or the person performing the excavation work shall reinforce or brace the neighboring structure in order to prevent sagging, settling, cracking or collapse of its foundation and walls." Mun. Code of Chi. § 13-124-400(a). It further provides that the "owner of the property where excavation takes place and the person performing the work shall be jointly and severally liable for any damage, death or injury caused by sagging, settling, cracking or collapse of the public way or of the foundation or walls of a structure located within five feet of the excavation, due to absent or insufficient reinforcement or bracing, or due to any other act or omission in the performance of the excavation." *Id.* § 13-124-410.

Defendants Axios and Kokalias filed a joint motion to dismiss Count XIII [190], and Defendants Geo and Ground separately filed motions to dismiss Count XVI. See [183] (Geo); [185] (Ground). All of these Defendants argue that they did not "perform the excavation work" as required by the Ordinance. Additionally, Defendant Geo argues that Plaintiffs' allegations that it did such work are impermissibly conclusory, see [183] at 12; Defendant Ground argues that the Ordinance does not provide a private right of action; and Defendants Kokalias and Axios argue that the fourth amended complaint fails to allege facts establishing that they were subject to the Ordinance, [190] at 3-6, and that "a construction of the Ordinance that would subject Axios and Kokalias to liability would be preempted by" the ALEPA. [190] at 8-10.

### 1.    Preemption

Defendants Kokalias and Axios contend that the Ordinance is preempted by the ALEPA because the ALEPA provides that "there is no liability for damage done to any building or other structure by reason of the excavation except as herein provided or otherwise provided by law." [190] at 9 (quoting 765 ILCS 140/1(3)). They argue that Illinois courts have interpreted the phrase "by law" "to refer exclusively to enactments by the General Assembly." *Id.* Therefore, although the City of Chicago is a "home rule unit" under Article VII, § 6(a) of the Illinois Constitution, "the liability limitation contained in ALEPA would seem to prevent the enforcement of local ordinances purporting to impose broader liability for excavation damage than that provided by the Act." *Id.*

Article VII, Section 6(a) of the Illinois Constitution "was written with the intention to give home rule unites the broadest possible powers." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 988 N.E.2d 75, 81 (Ill. 2013). The Illinois General Assembly may preempt the exercise of a municipality's home rule powers, but it can do so only by enacting a statute

containing an express statement to that effect; "[t]o restrict the concurrent exercise of home rule power, the General Assembly must enact a law *specifically* stating home rule authority is limited." *Id.* For instance, in *Neri Brothers Construction v. Village of Evergreen Park*, 841 N.E.2d 148, 152-53 (Ill. App. Ct. 1st Dist. 2005), the Illinois Appellate Court considered a state statute providing that (1) "A home rule unit may not regulate underground utility facilities and CATS facilities damages prevention, as provided for in this Act," and (2) "This Section is a denial and limitation of home rule powers and functions under subsection (h) of Section 6 of Article VII of the Illinois Constitution." The court held that the statute preempted any municipal efforts to regulate underground utility facilities damage prevention but did not explicitly preclude – and therefore did not preempt – home rule units from enacting ordinances governing remediation expenses associated with damage to underground utility facilities. "If the legislature does not expressly limit or deny home rule authority, a municipal ordinance and a state statute may operate concurrently." *Palm*, 988 N.E.2d at 81. Thus, "home rule units may continue to regulate activities even if the state has also regulated those activities." *Id.* "The fact that the state has occupied some field of governmental endeavor, or that home rule ordinances are in some way inconsistent with state statutes, is not in itself sufficient to invalidate the local ordinances." *Id.* at 84.

Defendants Kokalias and Axios contend that the language in the ALEPA limiting liability for damage done to any building during an excavation to that provided in the ALEPA or "otherwise provided by law" expressly limits the authority of home rule unit Chicago to enact and enforce the Ordinance. This language does not on its face limit the authority of home rule units to enact ordinances pertaining to excavation liability. Defendants argue, however, that the phrase "by law" means "by enactment of the General Assembly." They rely on two cases,

*People ex rel. Devine v. Murphy*, 693 N.E.2d 349, 353 (Ill. 1998), and *Department of Transportation v. Carriage Hills Kennels*, 627 N.E.2d 303, 306 (Ill. App. Ct. 1st Dist. 1993), for this proposition. Neither is apposite, as both were addressing the phrase "as provided by law" as it is used in the Illinois Constitution. See *Murphy*, 693 N.E.2d at 353 ("Section 9 of article VI of our constitution expressly provides that the circuit courts 'shall have such power to review administrative action as provided by law.' Ill. Const. 1970, art. VI, § 9. The phrase 'as provided by law' is used '[w]hen our constitution intends that the legislature is to act in governing the activities of the court.'" (quotation omitted)); *Carriage Hills*, 627 N.E.2d at 306 ("In addition, the term "as provided by law" contained within our State Constitution in reference to the determination of just compensation, indicates to us that attorney fees and expenses should not be allowed unless specifically provided for by our laws on eminent domain. Since Illinois statutory law does not make reference to attorney fees, except in certain instances which are not relevant here, we must assume that reimbursement of attorney fees is not required as part of just compensation by our State Constitution."). Defendants do not contend that "provided by law" necessarily is given the same interpretation when it is used in statutes enacted by the General Assembly. More importantly, they have not demonstrated that Illinois courts view this language as sufficiently explicit to restrict the authority of home rule units to enact laws relating to excavation. See, *e.g.*, *Neri Bros.*, 841 N.E.2d at 151-52 (quoting 220 ILCS 50/14, which explicitly states that it is "a denial and limitation of home rule powers and functions"). Accordingly, the Court concludes that the Ordinance is not preempted by the ALEPA.

## 2.    "Performing the Excavation Work"

The restrictions set forth in the Ordinance apply only to (1) the owner of the property to be excavated or where excavation takes place and (2) the "person performing the excavation

work" or "performing the work." Mun. Code of Chi. §§ 13-124-400(a), 13-124-410. In arguments very similar (and in the case of Ground identical) to those raised in opposition to Plaintiff's ALEPA claims, Defendants argue that they did not "perform excavation work" and therefore cannot be liable under the Ordinance.

The Ordinance (and the broader Municipal Code of which it is part) does not define the terms "person performing the work," "performing the excavation work," "performing," "excavation," or "work." Nor does there appear to be any case law specifically addressing the contours of the Ordinance or clarifying these definitions. (The recent opinion in *Bockweg v. Konopiots*, --- N.E.2d ---, 2013 WL 5429288 (Ill. App. Ct. 1st Dist. Sept. 27, 2013), addresses the Ordinance but does so in the context of attorneys' fees; it was uncontested that the defendant excavating firm "performed" the excavation in question.) The Court accordingly looks to basic principles of statutory construction to ascertain the meaning of these terms and the scope of the Ordinance. See *Neri Bros.*, 841 N.E.2d at 153 ("Municipal ordinances are interpreted by applying traditional rules of statutory construction.").

The primary goal of statutory construction is to give effect to the intention of the legislature. *People v. Johnson*, --- N.E.2d ---, 2013 WL 5278417, at *2 (Ill. Sept. 19, 2013). The best evidence of that intent is the statutory language, given its plain and ordinary meaning. *Id.* When statutory terms are undefined, courts "presume the legislature intended the terms to have their popularly understood meaning." *Id.* Similarly, when terms have a settled legal meaning, courts "will normally infer that the legislature intended to incorporate the established meaning." *Id.* All provisions of a statutory enactment are viewed as a whole; all words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. *Brucker v. Mercola*, 886 N.E.2d 306, 313 (Ill. 2007). "Each word, clause

and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Id.* Likewise, courts presume that the legislature did not intend to produce absurd, inconvenient, or unjust results. *Id.* Courts "may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved." *Id.*

Here, the Ordinance uses the phrase "excavation work." Illinois courts routinely use this phrase to mean digging in the earth. See, *e.g.*, *Commonwealth Edison Co. v. Munizzo*, 986 N.E.2d 1238, 1241 (Ill. App. Ct. 3d Dist. 2013) ("Munizzo noted that he undertook the excavation work himself along with 'buddies of [his] who were helping [him]. * * * Munizzo and his friends began excavation by digging a trench between the transformer and the building on the property."); *Prebix v. Verizon N., Inc.*, 919 N.E.2d 1096, 1099-1100 (Ill. App. Ct. 4th Dist. 2009) ("In the spring of 2003, the Trusts began excavation work on the 6.883-acre parcel acquired from IDOT in 2002. Preparation for this excavation work revealed the underground cables that GTE – which was then Verizon – had installed * * * *"); *LaSalle Nat'l Bank v. Willis*, 880 N.E.2d 1075, 1078 (Ill. App. Ct. 1st Dist. 2007) ("Willis hired Quality to do the demolition of the then-existing house at 2325 North Southport and the shoring and excavation work preparatory to the construction of his new residence. * * * Defendants allegedly intended that the excavation would be deeper than Witt's house and less than 21 inches from her foundation."); *Peoples Gas Light & Coke Co. v. Joel Kennedy Constr. Corp.*, 829 N.E.2d 866, 868 (Ill. App. Ct. 1st Dist. 2005) ("Plaintiff alleged Kennedy Construction damaged its underground gas facility while performing excavation work on the land."); *Dean Mgmt., Inc. v. TBS Constr., Inc.*, 790 N.E.2d 934, 938 (Ill. App. Ct. 2d Dist. 2003) ("Snow testified that he was ready, willing, and able to work on April 7, 2000, and that he started loading dirt onto trucks that morning. * * *

Snow's time records indicate that he left the site at 8:15 a.m. Snow admitted that much of defendant's excavation work had not yet been completed at the time he left the project."). This usage comports with the Seventh Circuit's usage, see *Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 546 F.3d 918, 931 (7th Cir. 2008) ("After Alberici stopped digging on February 14, 2003, it performed no more excavation work at the site. Indeed, the site appears to have lain dormant for over 19 months until September 29, 2004, when another company began digging a second hole for the company."), as well as ordinary dictionary definitions of the term "excavation." See 5 Oxford English Dictionary 493 (2d ed. 1989) ("The action or process of digging out a hollow or hollows in (the earth, etc.); an instance of the same; the result or extent of the process."); Merriam Webster's Collegiate Dictionary 434 (11th ed. 2003) ("the action or process of excavating");

Construing the term "excavation work" in this sense – as the portion of a construction project entailing digging – comports with the remainder of the Ordinance as well as other portions of the Chicago Municipal Code. For instance, sections 13-28-010 and 13-28-020 of the Municipal Code distinguish between "excavating work" and other aspects of construction for purposes of registration requirements. See also Mun. Code of Chi. § 2-51-010(5) (separately listing alterations, construction, demolition, and excavation); *id.* § 10-32-120 (separately listing erection, alteration, repair, demolition, and "excavation in connection therewith"); *id.* § 13-32-125 (defining "construction site" in relevant part as "any or all portion[s] of the real property that is identified as the location of any excavation or of the erection, enlargement, alteration, repair, removal or demolition of any building"). Section 13-124-390 of the Ordinance requires owners of property on which "excavation work" is to be performed to provide notice to their alderman and owners of adjacent of property "of the anticipated starting date and *three-dimensional*

24

*measurement of the excavation work*." (emphasis added). Additionally, among the penalties for violating the Ordinance is the revocation of an excavator's license, see Mun. Code of Chi. § 13-124-440(c), and an "excavator" is "one that excavates," or one who "form[s] a cavity or hole." Merriam Webster's Collegiate Dictionary 434 (11th ed. 2003).

Plaintiff is correct that the fourth amended complaint alleges that Defendants "rendered services with the goal of removing earth from 21 East Cedar," [61] at 8, but it does not allege that these Defendants themselves performed the work of removing earth from the site. "Excavation," not "work," is the crucial term of the phrase "performing excavation work," *contra* [61] at 8; the adjective "excavation" limits the type of work that is covered by the Ordinance. The plain and ordinary meaning of the phrase "performing excavation work" is a narrow one, and construing the phrase in the broad sense that Plaintiff advocates could lead to the absurd result that entities whose involvement with a project wholly ceases before any earth movement is ever undertaken could be required to provide notice to neighbors of work that may never occur or to bear liability for acts over which they have no modicum of control. At the same time, construing the phrase to include only excavators avoids the "anomalous situation" with which the *Proud* court was concerned: an owner who is strictly liable could recover from the excavator even if the excavator were not negligent, and the excavator could use principles of tort liability to potentially recover from other negligent actors involved in the project. See *Proud*, 255 N.E.2d at 71.

Plaintiff does not allege that any of the Defendants whose motions to dismiss are currently pending actually "performed excavation work." See Mun. Code of Chi. § 13-124-380. Accordingly, the Court grants in part Defendants' motions to dismiss, [183], [185], [190], to the extent that they seek to dismiss Counts XIII and XVI.

**D.      Motion to Dismiss Certain Negligence Claims**

Count XIV sounds in negligence and names both Geo and Ground.  Only Geo has moved to dismiss Count XIV, however, and seeks only partial dismissal at that.  See [183].  Geo contends that two acts that it allegedly committed negligently – developing "a proper plan that would provide for proper support for adjacent structures" and investigating "the need for bracing and support of the properties adjacent to 21 East Cedar," [177-1] ¶ 139 – are outside the scope of work that Plaintiff alleges Geo was retained to provide.  Essentially, Geo contends that "it is improper for Plaintiff to allege that Geo Services is negligent in committing certain acts that, based on its own pleading, [Geo] had no duty to perform."  [183] at 7.

To state a claim for negligence, a plaintiff must allege that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury.  *Jones v. Chi. HMO Ltd. of Ill.*, 730 N.E.2d 1119, 1129 (Ill. 2000).  Geo's argument strikes at the duty element.  It misses the mark, though, in focusing on whether Geo was obligated to perform certain acts.  "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."  *Id.* (quoting W. Prosser, Torts 324 (4th ed. 1971)).  "What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty."  *Id.* (quoting W. Prosser, Torts 324 (4th ed. 1971)).  Thus, the pertinent query is whether Geo was any under obligation to conform its conduct toward Plaintiff (really, its insureds) to a particular standard, not whether it was retained to perform particular activities.  Geo's motion to dismiss does not address this query, and the fourth amended complaint plausibly alleges that Geo had a duty to the insureds to "exercise due care and caution in soil analysis for the excavation at the 21 East Cedar Street property."  [177-1] ¶ 138.  Geo's motion to dismiss [183] is denied in

part to the extent that it seeks dismissal of portions of Count XIV.

**IV.    Conclusion**

For all of the reasons stated herein, the Court grants Plaintiff's motion to dismiss the counterclaims for spoliation [172], grants Defendants Kokalias and Axios's motion to dismiss Count XIII [190], denies Defendants Kokalias and Axios's motion to dismiss Count XII [191], and grants in part and denies in part Defendant Geo's [183] and Defendant Ground's [185] motions to dismiss.

Dated: October 17, 2013

_____
Robert M. Dow, Jr.
United States District Judge