# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHUBB INDEMNITY INSURANCE COMPANY, as subrogee of GORDON SIEGEL, M.D. and CLARI WECHTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 10 CV 7111 ) ) Judge Robert M. Dow, Jr. |
| 21 EAST CEDAR, LLC; ICON DESIGN & DEVELOPMENT, INC.; CODEX EXC, INC.; BILL KOKALIAS; SWAIN DEVELOPMENT CORPORATION; AXIOS ARCHITECTS & CONSULTANTS, LTD d/b/a AXIOS CONSULTANTS & DESIGN/BILL G. KOKALIAS ARCHITECTS & DESIGN; DEMETRIS GIANNOULIAS; GEORGE GIANNOULIAS; GROUND ENGINEERING CONSULTANTS; GEO SERVICES, INC.; and SHORELINE STEEL, INC., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants Ground Engineering Consultants' and Geo Services, Inc.'s joint motion for reconsideration [217]; Defendant Ground Engineering Consultants' motion for partial summary judgment [224], which Defendants Codex Exc, Inc., Geo Services, Inc., Axios Architects & Consultants, Ltd., and Bill G. Kokalias have joined, see [232]; [245]; and Defendants Demetris Giannoulis, George Giannoulis, and 21 East Cedar, LLC's joint motion to join Defendant Ground Engineering Consultants' motion for partial summary judgment [235]. For the reasons stated below, the Court denies the motion for reconsideration [217], grants the motion to join Ground Engineering Consultants' motion for partial summary judgment [235], and grants in part and denies in part the motion for partial summary judgment [224]. This matter

is set for status on July 1, 2014 at 9:00 a.m.

I.      **Background**

Plaintiff Chubb Indemnity Insurance Co. ("Chubb") provided property insurance to Dr. Gordon Siegel and Clari Wechter ("the insureds"), who owned and resided in a single-family residence located at 25 East Cedar Street, Chicago, Illinois. The insureds' home sustained significant damage contemporaneous with demolition, excavation, and construction taking place on an adjacent lot located at 21 East Cedar Street. Plaintiff paid out policy benefits to the insureds, who are not involved in the action, and is seeking to recover from Defendants in its capacity as the insureds' subrogee. Each Defendant allegedly had some involvement in the project at 21 East Cedar Street.

Plaintiff's fourth amended complaint [182] asserted claims under the Adjacent Landowner Excavation Protection Act ("ALEPA"), 765 ILCS 140/1, against Defendants 21 East Cedar, LLC ("21 East Cedar"), Demetris Giannoulias ("D. Giannoulias"), George Giannoulias ("G. Giannoulias"), Swain Development Corporation ("Swain"), Icon Design & Development, Inc. ("Icon"), Codex Exc ("Codex"), Bill G. Kokalias ("Kokalias"), Axios Architects & Consultants, Ltd. ("Axios"), Ground Engineering Consultants ("Ground"), Geo Services, Inc. ("Geo"), and Shoreline Steel, Inc. ("Shoreline"). See [182] (Counts I, IV, VII, IX, XII, XV, and XVIII). Plaintiff also claimed that Defendants 21 East Cedar, D. Giannoulias, G. Giannoulias, Swain, Codex, Kokalias, Axios, Ground, Geo, and Shoreline violated Chicago's "Excavation Work on Private Property" Ordinance, Mun. Code of Chi. §§ 13-124-380 *et seq.* ("the Ordinance"). See *id.* (Counts II, V, X, XIII, XVI, and XIX). Plaintiff further alleged that Defendants Swain, Icon, Codex, Kokalias, Axios, Ground, Geo, and Shoreline acted negligently. See *id.* (Counts III, VI, VIII, XI, XIV, and XVII).

2

Defendants Axios, Kokalias, Geo, and Ground moved to dismiss the ALEPA counts against them on the basis that they were not "owners or possessors of land" subject to liability under the statute. These same four Defendants also moved to dismiss the Ordinance counts against them on the basis that they did not actually "perform excavation work." Defendant Geo alone moved to dismiss the negligence count against it. The Court granted Defendants' motions as to the Ordinance counts but denied them as to the ALEPA and negligence counts. See [211]. Defendants Ground and Geo jointly have moved for reconsideration of the Court's denial of their motion to dismiss the ALEPA counts. See [217].

Defendant Ground also has moved for partial summary judgment "on the issue of whether Plaintiff's claimed damages are, as a matter of law, ensuing losses as defined under Plaintiff's first-party insurance policy." [224] at 1. Defendants Geo [228], Codex [229], and Axios and Kokalias [240] moved to join the motion. The Court granted their motions to join. See [232]; [245]. The Court also grants Defendants 21 East Cedar's, D. Giannoulias's, and G. Giannoulias's joint motion [235] to join Ground's motion for partial summary judgment.

## II. Motion for Partial Summary Judgment

### A. Local Rule 56.1

Local Rule of Civil Procedure 56.1 requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. R. 56.1(a)(3). The statement "shall consist of short numbered paragraphs" that refer to "materials relied upon to support the facts set forth." N.D. Ill. R. 56.1(a). The party opposing summary judgment is then required to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the

3

record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B).

"The obligation set forth in Local Rule 56.1 'is not a mere formality.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994)). "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts," the Seventh Circuit has "consistently upheld the district court's discretion to require strict compliance with those rules." *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005); see also *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases).

Neither Defendant Ground, the initial movant, nor any of the Defendants who have joined Ground's summary judgment motion, filed the statement of facts required by Local Rule 56.1(a). Plaintiff nonetheless properly filed the responsive statement required by Local Rule 56.1(b)(3), see [237], which did not prompt Ground or any of the other moving Defendants to correct their omission. Ordinarily, the party that neglects to file a Local Rule 56.1 statement is the one responding to the motion for summary judgment. The consequence prescribed in Local Rule 56.1 for that violation is that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. R. 56.1(b)(3)(C); see also *Apex v. Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Here, the Court is confronted with the more unusual, reverse situation, in which the moving party failed to comply with Local Rule 56.1 by submitting a statement of material facts in the first instance. Per the plain language of the rule, "[f]ailure to submit such a statement constitutes grounds for denial of the motion." N.D. Ill. R. 56.1(a).

"[I]t is clear that the decision whether to apply the rule strictly or to overlook any

4

transgression is one left to the district court's discretion." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). The Court is tempted to exercise its discretion to deny the motion in light of Defendants' violation of Local Rule 56.1. All of the Defendants that filed or signed on to the motion are represented by counsel and should have been alerted to their omission by Plaintiff's responsive statement, which expressly averred that "Defendant, Ground Engineering Consultants ('GEC'), did not include a L.R. 56.1(a)(3) statement of undisputed material facts to which Plaintiff can respond." [237] ¶ 1. The Court finds it preferable at this juncture, however, to address the motion on the merits and move this case forward to the extent that it can. In doing so, the Court will deem admitted for purposes of this summary judgment motion the relevant facts properly set forth in Plaintiff's 56.1 statement. The Court also considers the terms of the insurance policy at issue, which was placed in the record by both Plaintiff, see [237-3] & [237-4], and Ground, see [226-1] & [226-2], and the other evidence in the record. See Fed. R. Civ. P. 56(c)(3).

    **B.**    **Facts**

Plaintiff was party to an insurance contract with Dr. Siegel, who along with Clari Wechter owned a home located at 25 East Cedar Street in Chicago. See [237] ¶¶ 2, 13. The terms of the insurance contract were set forth in Policy No. 1319061701-000001 ("the policy"). *Id.* ¶ 13. It is undisputed that the insureds' house sustained damage. Evidence in the record suggests, particularly when construed in the light most favorable to Plaintiff, that some combination of Defendants' actions at 21 East Cedar Street caused the damage. See [224] at 10 ("[N]othing in the court record contradicts the position that the damages sustained to the insured residence were caused by Project-related construction activities.").

Under the all-risk policy, a "covered loss" is defined as "all risk of physical loss to your

home or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies." [237] ¶ 15. Terrence Young ("Young"), the claims adjustor assigned to the insureds' claim, see [237] ¶¶ 12, 13, determined that the damage to the insureds' home was covered under the policy. *Id.* ¶ 16.

Defendants asked Young about several policy exclusions at his deposition. All of the potentially relevant exclusions provide that "ensuing covered loss[es]" are covered. For instance, one of the exclusions provides:

> **Faulty planning, construction or maintenance.** We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors, or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. 'Planning' includes zoning, placing, surveying, designing, compacting, setting specifications, developing property, and establishing building codes or construction standards. 'Construction' includes materials, workmanship, and parts or equipment used for construction or repair. [237-3] at B4-9.

The policy defines "caused by" to "mean any loss that is contributed to, made worse by, or in any way results from that peril." [237-3] at B4-7. The policy does not define "ensuing covered loss" or "ensuing."

Young testified that the "faulty planning, construction or maintenance" exclusion was not applicable to the insureds' losses because the work at 21 East Cedar Street "wasn't work being directed by our insured. It wasn't work contracted by our insured." [226] at 95:18-20; see also [237] ¶ 17. Young further asserted that this exclusion and the others in the policy "apply to that specific property" and do not "apply to a neighbor's property, because a neighbor is performing the work." [226] at 97:10-12; [237] ¶ 17. Young later explained in an affidavit that the "purpose of including a faulty planning, construction or maintenance exclusion * * * is that damage stemming from such activity is deemed to occur. In that situation, the insured would look to the

construction contracts and contractors to address the faulty construction." [237-2] ¶ 4. Young further reiterated his position that "this exclusion applies only for damages that result from planning, construction or maintenance intended for the insured risk." *Id.*; see also [237] ¶ 18. It is undisputed that Plaintiff in fact paid benefits to the insureds under the policy and now seeks to proceed as a subrogee.

C.   **Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine dispute of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

Ground did not move for summary judgment on any particular claim or defense, or even part of an identified claim or defense. See Fed. R. Civ. P. 56(a). It did not, for instance, argue that it is entitled to judgment as a matter of law on Count XIV. To the contrary, Ground resisted Plaintiff's efforts to pin its motion to a particular theory or claim, see [238], and maintained that it seeks partial summary judgment "on the issue of whether Plaintiff's claimed damages are, as a matter of law, ensuing losses as defined under Plaintiff's first-party insurance policy." [224] at 1. Ground's motion may have been more effective in advancing the litigation had it sought summary judgment as to a particular claim or on a fully developed (rather than merely alluded to) theory of defense. However, courts may consider motions for partial summary judgment as

7

to particular issues or facts in a case, even if those issues are not in and of themselves dispositive of a claim or case. See, *e.g.*, *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 513 (7th Cir. 2014); *Gipson v. United States*, 631 F.3d 448, 452 (7th Cir. 2011) ("Gipson should have been able to move successfully for partial summary judgment, establishing a breach of the standard of care and leaving only issues of causation and damages for further proceedings."). The Court does so here in an attempt to advance this protracted litigation.

**D. Analysis**

Relying on an interrogatory answer and deposition testimony from Plaintiff's claims adjustor, Ground (and the other Defendants who have joined its motion) contends that Plaintiff "has repeatedly stated that all of its insureds' damages are ensuing losses and, accordingly, covered under the policy." [224] at 4. In Ground's view, "[t]his position is legally untenable, given the legal definition of ensuing loss," *id.*, which Ground asserts is "a hazard or occurrence that is separate and independent from the original, direct loss." *Id.* at 5. Ground thus contends that "characterization of the damages as ensuing losses is a legal impossibility as there is no subsequent, separate, or collateral damage following the damage caused to the residence at 25 E. Cedar Street by the Project's construction activity." *Id.* at 2. In other words, the losses cannot by definition be both direct and ensuing. In a similar vein, Ground additionally suggests that it is inconsistent for Plaintiff to assert that the losses to the insureds' home were both "ensuing" and covered under the policy, because "[i]f a policy exclusion does not apply, its ensuing loss provision is, necessarily, inapplicable." *Id.* at 8. Plaintiff responds that the damages to the insureds' home were caused directly by the construction at 21 East Cedar Street and that the risk of such damage was within the scope of – and covered by – the insureds' policy. See [236] at 9-

8

11.[1]

The construction of the provisions of an insurance policy is a question of law for the Court. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001). In construing the terms of a policy, "the court's primary objective is to ascertain and give effect to the intent of the parties to the contract." *Id*. The Court construes the policy as a whole and "take[s] into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.* (quotation omitted). If the language of the policy is susceptible to more than one meaning, it is considered ambiguous and must be construed in favor of the insured. *Id.* This rule of construction only comes into play when a policy is ambiguous. *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). The Court "will not strain to find ambiguity in an insurance policy where none exists." *Travelers*, 757 N.E.2d at 491 (quotation omitted). If policy language is not ambiguous, the Court affords the terms their plain, ordinary, and popular meaning, *id*., and applies the policy as written "unless it contravenes public policy." *Hobbs*, 823 N.E.2d at 564.

The insureds' policy was an "all-risk" policy that by its terms covered "all risk of physical loss to your home or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies." [237] ¶ 15. "Generally, an 'all risk' insurance policy creates a special type of coverage extending to risks not usually covered under other insurance, and recovery under an 'all risk' policy will, as a rule, be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision

---

[1] Plaintiff, evidently anticipating the next logical steps of Ground's apparent legal strategy of challenging Plaintiff's position as a subrogee, also contends that its maintenance of this action is proper because the insureds assigned their rights to Plaintiff, arguments pertaining to the "volunteer defense" have been waived, and that even if such arguments are not waived they are not applicable in the context of "conventional subrogation." See [236] at 4-8. Ground replies that these arguments are "non-responsive" and "immaterial to the issue," [238] at 2, and, accordingly, does not engage them. See generally [238]. The Court need not and does not reach these arguments.

expressly excluding the loss from coverage." *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 236 (Ill. App. Ct. 1st Dist. 2008) (quotation omitted); see also *TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 576 (6th Cir. 2010) ("As an 'all-risk' policy, this insurance policy basically covers everything unless specifically excluded."). The Illinois Appellate Court has explained that "[f]ortuitous means "happening by chance or accident, or occurring unexpectedly or without known cause." *Bd. of Educ. of Maine Twp. High Sch. Dist. 207 v. Int'l Ins. Co.*, 684 N.E.2d 978, 981 (Ill. App. Ct. 1st Dist. 1997) (citing Black's Law Dictionary 654 (6th ed. 1990)). "The determination of whether a loss is fortuitous is a legal question for the court to determine." *Id.* (quotation omitted).

The parties agree that the insureds' losses were caused directly by the construction activities at 21 East Cedar. Indeed, Ground has asked the Court to find, as a matter of law, "that all the damages sustained to Chubb's insureds' premises are direct damages resulting from the construction activities at 21 E. Cedar Street." [224] at 16. Because the parties agree on this issue, and, as Ground accurately notes, "nothing in the court record contradicts the position that the damages sustained to the insured residence were caused by Project-related construction activities," [224] at 10, the Court grants in part the motion for partial summary judgment on this issue. Accordingly, it will be established going forward in this case that some aspect of the construction at 21 East Cedar was the cause of the damage to the insureds' property. See Fed. R. Civ. P. 56(g).

Claims adjustor Young repeatedly testified at his deposition that the damage to the insureds' home resulting from the construction was an "ensuing loss." Plaintiff made the same representation in an interrogatory response. ("Here, the negligent conduct and statutory violations of third parties caused direct physical damage to the insured building. Structural

10

damage arising from the negligent or otherwise unlawful conduct of third parties is not expressly excluded from the policy coverage anywhere. The damage that flowed from the negligent conduct of others constitute[ed] an ensuing loss, which remained covered under the policy.") Ground seizes on this phrasing, which it links to the policy's various exclusions stating that "we do insure ensuing covered loss unless another exclusion applies," despite Young's failure to use that policy term during his deposition[2] and Plaintiff's failure to invoke it in its interrogatory answer. Ground suggests that Plaintiff's "characterization of its damages as ensuing losses under the policy is purely semantic and self-serving, designed to invoke the ensuing loss provision of the Faulty Planning Exclusion in order to protect its coverage determination." [224] at 14. The Court disagrees.

Plaintiff's legal position, as asserted by its counsel, is that "[d]amage to the Siegel home arising from the negligent or otherwise unlawful conduct of third parties, as a risk, is not expressly excluded from policy coverage anywhere. Therefore, Chubb appropriately paid for the losses as the policy provided coverage. There is no exclusion in the Chubb policy that would change this result." [236] at 9-10. This position is consistent with Young's testimony and Plaintiff's earlier interrogatory answer, both of which aver that the losses to the insureds' home ensued directly from the construction activities and were not barred by any policy exclusions. To the extent that Young's testimony could be understood as contrary, it at best amounts to a legal conclusion from a lay witness. Young's testimony that the losses were "ensuing losses" does not necessarily mean that the losses were within the "ensuing *covered* loss" clause in the policy any more than lay witness testimony that an act was negligent makes it legally so.

The "ensuing covered loss" provision by its terms applies only when coverage is

---

[2] Young used the policy term "ensuing covered losses" only when reading from the policy at the direction of defense counsel. Notably, defense counsel also neglected to use the policy term "ensuing covered loss." Instead, counsel asked Young about "ensuing loss." See [224-2].

excluded by the policy. See *Bd. of Educ. of Maine Twp. High Sch. Dist. 207 v. Int'l Ins. Co.*, 684 N.E.2d 978, 984 (Ill. App. Ct. 1st Dist. 1997) ("[T]he 'exceptions' clause would bring within coverage a loss from a covered peril that follows an excluded peril."); *cf. Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 953 (8th Cir. 2012) (interpreting identical "faulty planning" exclusion containing "ensuing covered loss" clause under Minnesota law and concluding that "the ensuing-loss provision excludes from coverage the normal results of defective construction, and applies only to distinct, separable, ensuing losses" (quotation omitted)). Here, however, Ground has not pointed to any evidence in the record, legal authority, or rules of construction to support the predicate conclusion that any policy exclusion applies here. Plaintiff has proffered a reasonable interpretation of its policy, namely that the "faulty planning" exclusion – the only one addressed in Ground's brief, see [224] at 10 – applies only to faulty planning, construction, or maintenance related to work specifically related to and intended to improve or maintain the insured property. See [236] at 10. This interpretation of the exclusion is reasonable in light of the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. The exclusion conceivably could be read to apply to all "faulty acts, errors or omissions of you or any other person in planning, construction or maintenance" that happen anywhere in the world, but such an interpretation would contravene public policy and lead to absurd results.

All-risk insurance policies are intended to provide recovery for all fortuitous losses not brought about by an insured's own misconduct, unless the losses are expressly excluded. It would not make sense to interpret the policy to exclude coverage for mishaps entirely outside of the insureds' knowledge, control, or potential supervision merely because they occur as a result of another's "construction" project rather than some other, equally fortuitous event. For instance, if a building were being erected two blocks away and a crane dropped materials on the

12

insureds' home, the loss would be entirely fortuitous to the insured; coverage should not be denied merely because the loss came about due to another's "construction" project rather than, say, a plane dropping the same materials on the home.

The bottom line is that the Court cannot conclude, as a matter of law, that the damage to the insureds' property fell within the single identified policy exclusion. Therefore, it is irrelevant whether an "ensuing loss" is one that came about because of the construction – as Young appeared to use and understand the term – or one that happened separate and distinct from a "direct loss" that is not covered by the policy – as Ground maintains. Ground, not Plaintiff, appears to be engaging in a "semantic and self-serving" characterization of the damages here. Ground has not demonstrated its entitlement to judgment as a matter of law, so the Court denies Ground's motion for partial summary judgment on the issue of whether Plaintiff's "damages claimed in this litigation are ensuing losses under the subject first-party insurance policy." [224] at 16.

## III.     Motion for Reconsideration

### A.     Background

The Illinois Adjacent Landowner Excavation Protection Act ("ALEPA"), 765 ILCS 140/1, protects the owners of properties adjacent to properties that are being excavated. *Proud v. W.S. Bills & Sons, Inc.*, 255 N.E.2d 64, 68 (Ill. App. Ct. 3d Dist. 1970). In relevant part, the ALEPA requires the "owner or possessor of land intending to make or to permit an excavation to be made on his land" to "give due and reasonable notice in writing to the owner or owners of adjoining lands and of adjoining buildings and other structures stating the depth to which the excavation is intended to be made and when the excavation will begin." 765 ILCS 140/1(1). If the excavation depth is projected to be not more than eight feet below grade, see 765 ILCS

140/1(4), the "owner or possessor" of the land to be excavated must give the owner of the adjacent property at least 30 days to take protective measures to shore up his property. 765 ILCS 140/1(1). If the excavation depth is projected to be deeper than eight feet below grade, the "owner or possessor of the land on which the excavation is being made, if given the necessary license to enter on adjoining land and not otherwise, shall protect the said adjoining land and any building or other structure thereon, without cost to the owner thereof, by furnishing lateral and subjacent support to said adjoining land and all buildings and structures thereon." 765 ILCS 140/1(5). "Owners" or "possessors" who fail to comply with these requirements are liable to the "owner[s] of adjacent property for any damage to the land or to any buildings or other structure thereon arising from such excavation." 765 ILCS 140/1(2), (5).

Count XV of Plaintiff's fourth amended complaint alleges that Defendants Ground and Geo neither provided notice of the excavation nor provided adequate bracing of the insureds' land. See [182]. Defendants Ground and Geo separately moved to dismiss this count, see [183]; [185], arguing that they are not an "owner or possessor of land" and therefore cannot be subject to liability under ALEPA. In evaluating and ultimately rejecting this argument, the Court relied on two Illinois Court of Appeals cases interpreting the ALEPA, *Proud v. W.S. Bills & Sons, Inc.*, 255 N.E.2d 64 (Ill. App. Ct. 3d Dist. 1970), and *Lawry's The Prime Rib, Inc. v. Metropolitan Sanitary District of Greater Chicago*, 563 N.E.2d 981 (Ill. App. Ct. 1st Dist. 1990). Based on its reading of those cases, the Court concluded that Illinois courts have construed "owner or possessor of land" to encompass those who have "possessed" land due to their involvement in an excavation. Applying that definition, the Court denied the motion to dismiss after concluding that Plaintiff's allegations "reasonably suggest that each Defendant did more than provide one-off consultations on the design of a single component of the project, and that each was involved

14

in at least some aspect of the on-site excavation." [211] at 14.

Defendants Ground and Geo have moved for reconsideration of this order [217]. They contend that the Court "made a manifest error of law" in denying their motions because "(1) it failed to precedentially analyze and correctly define 'possessor' under ALEPA, and (2) it denied the motions to dismiss notwithstanding that Chubb's allegations did not aver that Movants were 'possessors' of the land under ALEPA." [217] at 2.

### B. Legal Standard

Because Ground and Geo have moved for reconsideration of an interlocutory order rather than a final judgment, their motion for reconsideration [217] is governed by Federal Rule of Civil Procedure 54(b):

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Accordingly, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders. See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Trs. of Pension, Welfare, and Vacation Fringe Benefit Funds of IBEW Local 701 v. Pyramid Elec.*, 223 F.3d 459, 469 (7th Cir. 2000).

It is well established, however, that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion

15

to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also *Wiegel v. Stork Craft Mfg., Inc.*, 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) ("Reconsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing."); *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. Am. Home Mortg. Servicing*, 2010 WL 3306912, at * 1 (N.D. Ill. Aug. 19, 2010). And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee*, 906 F.2d at 1191. Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

**C.    Analysis**

Ground and Geo primarily contend that the Court's analysis of the phrase "owner or possessor of land" as used in the ALEPA was deficient, particularly when compared to its construction of the phrase "performed excavation work" as used in the Chicago Municipal Code. Ground and Geo assert that, in the latter analysis, "the Court looked to the term's definition under Illinois decisional law, its usage in other sections of the Ordinance and the Municipal Code at large, and its dictionary definitions." [217] at 3. They contend that "the Court did not employ a similar approach or apply comparable judicial rigor in defining 'possessor' under ALEPA."

*Id.* "In fact," they contend, "the Court relied solely on two Illinois decisions, one of which Movants argued was distinguishable," and "did not explore the term's usage in case law, secondary sources, dictionaries, or other statutes." *Id.* Ground and Geo argue that adequate consideration of these types of sources "conclusively demonstrate[s] that Movants are not 'possessors' under ALEPA." *Id.* They have directed the Court to several such sources, including Illinois case law concerning personal injuries sustained on construction sites, see *id.* at 4-5, and Illinois statutory schemes using the term "possessor." See *id.* at 6-7.

Neither Ground nor Geo previously directed the Court to any of these sources, or argued that the Court should look any further than the Illinois Appellate Court's decision in *Lawry's The Prime Rib, Inc. v. Metropolitan Sanitary District of Greater Chicago*, 563 N.E.2d 981 (Ill. App. Ct. 1st Dist. 1990). Instead, both contended at the motion to dismiss stage that *Lawry's* was controlling and that, under *Lawry's*, they were not subject to liability under the ALEPA. See [95] at 3-6 (Ground); [98] at 7-9 (Geo); [120] at 3 (Ground); [121] at 3-5 (Geo); [183] at 7-10 (Geo); [185] at 3-6 (Ground). As Plaintiff points out, however, see [227] at 6, 8, the general rule is that a motion for reconsideration is not an appropriate vehicle to present arguments that could have been raised previously. *Cf. Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *Wiegel v. Stork Craft Mfg., Inc.*, 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) ("Reconsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing."). This is true even where, as here, the new arguments were already advanced by other movants, see [191] at 7-8 (discussing *O'Connell v. Turner Constr. Co.*, 949 N.E.2d 1105 (Ill. App. Ct. 1st Dist. 2011), *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 916 N.E.2d 1203 (Ill. App. Ct. 1st Dist. 2009), and Restatement (Second) of Torts §§ 328E(a) & 343), and rejected by the Court. See [211] at 15

17

n.1.

Moreover, this case arose under the Court's diversity jurisdiction. The Court's role in such cases is to interpret and apply state substantive law as it predicts that the state's highest court would. See, *e.g.*, *In re Crane*, 742 F.3d 702, 707-08 (7th Cir. 2013). Here, the Illinois Supreme Court has interpreted neither the phrase "owner or possessor of land" as used in the ALEPA nor the phrase "perform excavation work" as used in the Ordinance. "Where the state supreme court has not ruled on an issue, decision of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); see also *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). The parties directed the Court to two key Illinois Appellate Court decisions interpreting the ALEPA: *Proud* and *Lawry's*. The Court considered those decisions, see [211] at 11-15, and concluded that Illinois courts construe the phrase "owner or possessor of land" liberally to encompass even "fleeting" possession, *Proud*, 255 N.E.2d at 70, at least by those who had some on-site involvement in the challenged excavation. See [211] at 13; *Lawry's*, 563 N.E.2d at 985. Because these decisions squarely addressed the statutory language at issue, and there were no "persuasive indications" that the Illinois Supreme Court would interpret the ALEPA differently, the Court found *Proud* and *Lawry's* controlling. The Court was not (and is not now) persuaded that the Illinois Supreme Court would find more instructive authority addressing duties of care owed to workers on construction sites or interpreting different statutory regimes, particularly when both bodies of law were in existence but not contemplated by the *Proud* or *Lawry's* courts.

The Court's analysis of the Ordinance necessarily took a different trajectory, as there did not "appear to be any case law specifically addressing the contours of the Ordinance or clarifying

18

these definitions [of 'person performing the work,' 'performing the excavation work,' 'performing,' 'excavation,' or 'work.']." [211] at 22. In the absence of interpretative guidance from the Illinois Supreme or Appellate Courts, the Court began its analysis from the ground up, following the rules of statutory construction set forth by the Illinois Supreme Court. Thus, the Court looked to the plain language of the statute, the ordinary and "settled legal" meanings of the contested terms, the remainder of the statutory scheme, and the legislature's intent. See [211] at 22-23 (citing *People v. Johnson*, 995 N.E.2d 986, 988 (Ill. 2013), and *Brucker v. Mercola*, 886 N.E.2d 306, 313 (Ill. 2007)). The Court is not persuaded that reconsideration of its analyses is warranted here.

Ground and Geo next suggest that "the Court's position that use of various forms of 'excavation' in *Proud* is ambiguous, while providing two pages of judicial narrative in the October 17 order identifying the *consistency* with which the term 'excavation' has been legally understood, is, itself, puzzling and conflicting." [217] at 8; see also [231] at 3. The Court did not conclude, however, that the meanings of the terms "excavator" or "possessor" were ambiguous. Rather, the Court noted that the *Proud* court's apparently interchangeable use of such phrases as "contractor," "excavating contractors," "independent contractor making an excavation," and "independent contractor actually performing the job," coupled with its approval of *American Jurisprudence 2d* § 72, suggested that the ALEPA could apply to contractors generally, not merely those who engaged in "excavation," *i.e.*, digging in the dirt. See [211] at 14-15.

Ground and Geo's final argument is that "public policy supports reversal of the Court's denial of the motions to dismiss." [217] at 9. They contend that the Court's decision "runs the risk of imposing new duties upon participants in an excavation/construction project which are

19

completely incongruous with the legal liability of parties who are not 'possessors of land.'" *Id.* The Court recognizes Ground's and Geo's concerns that some participants in a project such as the one at issue "may not even be aware that an excavation is, in fact, being made if their involvement is merely design-related and/or ends prior to commencement of construction activity." [217] at 9-10. Indeed, the Court agrees that the duties imposed by the ALEPA "are appropriate only for those with actual presence and control," [217] at 10, and previously recognized that Geo and Ground may "ultimately prevail after more evidence regarding their actual degree of involvement in the project is adduced." [211] at 15. No evidence to that end properly has been submitted for the Court's consideration at this juncture, however, and Plaintiff's allegations – which the Court must accept as true for purposes of a motion to dismiss – plausibly suggest that both Ground and Geo had some responsibility for on-site excavation activities.

**IV. Conclusion**

For all of the foregoing reasons, the Court denies the motion for reconsideration [217], grants the motion to join Ground Engineering Consultants' motion for partial summary judgment [235], and grants in part and denies in part the motion for partial summary judgment [224]. This matter is set for status on July 1, 2014, at 9:00 a.m.

Dated: June 12, 2014

_____
Robert M. Dow, Jr.
United States District Judge